IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KENNETH SINGLETON,

    Petitioner,

  v.

JAMES E. TILTON, Acting Secretary, California Department of Corrections and Rehabilitation; DEE ADAMS, Warden, Corcoran State Prison,

    Respondents.

No. C 05-03557 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

Petitioner Kenneth Singleton petitions for a writ of habeas corpus under 28 U.S.C. 2254. Contrary to petitioner, his confession was not coerced and his sentencing did not violate due process. The petition fails to state valid grounds upon which a federal court can provide relief. It is therefore **DENIED**.

**STATEMENT**

Petitioner was convicted of first-degree murder with a firearm enhancement following a jury trial in Alameda County Superior Court. Petitioner fatally shot the victim about two hours after participating in a fist fight with him. Petitioner was seventeen when he committed the crime, but several months elapsed before he was arrested. He was eighteen when arrested (Pet. at 2–4). Petitioner was placed in an interview room at ten on the morning of his arrest. The

1  interviewers entered the room at around noon and read petitioner his *Miranda* rights, at which
2  time he invoked his right to counsel.  The interviewers started to leave the room, but stopped
3  when petitioner told them that he wanted to talk.  This first interview lasted less than twenty
4  minutes.  Petitioner was then interviewed on-and-off throughout the day without further re-
5  advisement of his rights.  He took naps, was given food and drink, and was given a coat when
6  he said he was cold.  At one point, petitioner asked to speak to his mother.  He was allowed to
7  call her, but the conversation was secretly taped and monitored by detectives without notice to
8  petitioner.  He told his mother that the police "were cool."  Soon after completing the call,
9  petitioner gave a taped confession at ten on the evening of his arrest (Pet., App. A at 1–5).

10  After being examined by mental health experts, petitioner was found mentally
11  incompetent to stand trial.  That was in August 2000.  In April 2002, he was found competent.
12  In an evidentiary hearing, the judge ruled that the confession could not be used in the
13  prosecution's case-in-chief because it was taken in violation of petitioner's right to counsel.  It
14  held, however, that the statement could be used for impeachment because it was not coerced
15  (Exh. 6-A at 184–88).  Petitioner testified and was impeached with his taped confession.  He
16  was subsequently convicted of first-degree murder with a firearm enhancement.  The court
17  imposed the statutory mandatory sentence of fifty-years to life.

18  Petitioner appealed his conviction and sentence.  That appeal contained the two claims
19  that are asserted in the instant action.  Petitioner argued that his confession should have been
20  deemed coerced, and should not have been used for impeachment.  He asserted that its use
21  prejudiced his defense.  He also argued that his sentence was so disproportionate as to constitute
22  cruel and unusual punishment.  The state court of appeal affirmed.  It found that the confession
23  was voluntarily given despite a violation of petitioner's *Miranda* rights.  It found the sentence to
24  have been proportional to the crime despite petitioner's background (Pet., App. A at 1–5).  A
25  petition for rehearing in the court of appeal, as well as a timely petition for review by the
26  California Supreme Court, were denied without statement (Pet., App. B, C).  Petitioner filed the
27  instant petition in September 2005.  In December, the respondents were ordered to show cause
28  why the writ should not issue.

**ANALYSIS**

Persons in custody pursuant to a state-court judgment may be provided habeas relief by a federal court if they are held in violation of the Constitution, laws or treaties of the United States. A petitioner must establish that, for any claim adjudicated on the merits, either (1) the state-court decision was contrary to clearly established federal law, as determined by the United States Supreme Court, (2) involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or (3) was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. 2254.

A state court's decision is "contrary to" federal law if it fails to apply the correct Supreme Court authority to a question of law or if it applies such authority incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision. A state court's decision involves an "unreasonable application" of federal law if it applies the governing Supreme Court rule in a way that is objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 405, 409–10 (2000). The Ninth Circuit has held that, in AEDPA cases, determinations of factual issues by a state court must be presumed correct unless they are the result of an "unreasonable determination." *Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004). This presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

Petitioner argues that his conviction should be overturned because his confession was coerced and should not have been used for impeachment. Petitioner also argues that his sentence should be invalidated because the sentence is disproportionate to his crime.

**1.     USE OF PETITIONER'S CONFESSION FOR IMPEACHMENT.**

Petitioner argues that the use of his taped confession for impeachment violated his Fifth and Sixth Amendment rights against self-incrimination and to counsel. The trial court found that the confession was admissible for impeachment because petitioner's right to silence was waived voluntarily, but not knowingly and intelligently. Petitioner argues that the waiver was not voluntary. The parties address the issue of coercion for both the Fifth and Sixth Amendment rights together. This order will likewise.

3

"Waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (citation omitted). Statements that are involuntary are inadmissible for any purpose. *Mincey v. Arizona*, 437 U.S. 385, 397–398 (1978). Statements that are voluntary, but made without a proper waiver, are admissible for impeachment. *Harris v. New York*, 401 U.S. 222, 224 (1971).

In evaluating voluntariness, courts do not look to the state of mind of an accused who waives his rights, but look for improper coercion by the state. Therefore, "[c]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'. . . ." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The question of voluntariness is whether the defendant's will was overborne at the time he made the waiver. *See Haynes v. Washington*, 373 U.S. 503, 513 (1963). When evaluating voluntariness, courts must look to the totality of the circumstances. *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991).

After the accused invokes his right to counsel, he is not subject to further interrogation until counsel has been made available, unless the accused initiates further communication with the police. *Edwards*, 451 U.S. at 484–85. Further communication is initiated when the accused evinces a "willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 426 U.S. 1039, 1045–46 (1983).

There is no dispute as to whether petitioner initiated further communication. Petitioner admits that, as the interrogators were preparing to leave after the right to counsel was invoked, he said, "Hey, hold up. I am going to talk to you guys" (Pet. 7). The only issue concerns voluntary waiver. Petitioner argues that his waiver was not voluntary because: (1) further questioning by the interrogators was a deliberate violation of *Miranda*; (2) petitioner's age, education, background, experience and circumstances contributed to the involuntary nature of his confession; and (3) petitioner was badgered and cajoled into waiving his rights. Petitioner

4

argues that it was prejudicial error to have allowed the confession to be used for impeachment because it was not made voluntarily.

Adjudicating the coercion issue must take many factors into account. This order will examine each factor in turn and conclude that the state court's determination was not contrary to, nor an unreasonable application of, established federal law. Factual determinations were not unreasonably made. Petitioner's arguments fail.

### A. Deliberate Violation of *Miranda*.

Petitioner claims that the police deliberately violated *Miranda* in continuing questioning after petitioner invoked his right to counsel. It is undisputed that petitioner's confession was taken in violation of *Miranda*, but petitioner believes the issue of deliberate violation is relevant because the Ninth Circuit in *Henry v. Kernan*, 197 F.3d 1021, 1028–29 (9th Cir. 1999), in holding that a confession was involuntary, found it significant that the police were intentionally violating *Miranda* to elicit statements that could be used for impeachment. Petitioner argues that this order should review the claim independently, without using the "unreasonable application" AEDPA standard, because the state court of appeal failed to adjudicate the claim on the merits.

Petitioner is incorrect in saying that the state court of appeal failed to adjudicate the claim on the merits. The court distinguished a cited decision from petitioner's case on the ground that the distinguished decision involved intentional conduct by detectives. By distinguishing petitioner's case on the issue of intentional conduct, the state court rejected petitioner's intentional conduct claim on the merits. This order, therefore, must apply the stricter AEDPA standard.

In *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002), a post-AEDPA habeas decision, the petitioner was held to have initiated further communication by asking, "What happened?" Answers to the interrogator's questions following that initiation were deemed properly admitted.

In the instant case, the interrogating officer testified that his failure to re-advise petitioner of his rights, after petitioner invoked his right to counsel and before further

5

questioning and the confession, was due to his understanding that the first advisement was sufficient. The officer testified that he believed petitioner had waived his right to counsel by initiating further communication (Exh. 6-A at 102–03). Petitioner *did* initiate further communication. Petitioner's statement, "I am going to talk to you guys," was surely more inviting of further conversation than the initiation in *Pollard*. It was therefore reasonable under federal law for the state court to conclude that the failure to re-advise was unintentional.

### B. Petitioner's Background.

Petitioner argues that the state court of appeal did not take into account relevant facts regarding petitioner's vulnerability to coercion when it evaluated the totality of the circumstances. Petitioner says specifically that his dependence on his mother and his mental state were not taken into account in determining that his statements were voluntary. This is not true.

The state court of appeal noted that petitioner's request to speak to his mother was honored. It also dedicated a paragraph of its statement of the facts to petitioner's phone call to his mother. The state court of appeal made mention of petitioner's mental history and the time during which he was found incompetent to stand trial (Pet., App. A at 6–7, 9, 12). The record shows that determinations as to petitioner's background were reasonably made. The state court considered all of the factors that defendant asked to be considered.

### C. Badgering and Cajoling.

Petitioner argues that he was badgered and cajoled into answering questions. As discussed above, petitioner initiated further communication during his first interview with police. There is no assertion or evidence in the record that petitioner was badgered or cajoled before he said, "I am going to talk to you guys," in the first fifteen minutes of questioning. It was reasonable for the court of appeal to conclude that petitioner was not improperly badgered or cajoled into initiating further conversation as nothing happened in the short time between the officers getting ready to leave and petitioner's invitation to further communication. As stated earlier, petitioner was held for two hours before the first interview. Other interviews occurred throughout the day as police went out to investigate petitioner's statements. He was in the

interview room for a total of twelve hours during which he took naps, was given food, drink, and a coat to keep warm.

There is no assertion or evidence in the record that petitioner later reasserted his right to silence or to counsel. To the contrary, there is testimony indicating that petitioner repeatedly asked to talk to the officers (Exh. 6-A at 97). Petitioner claims that a minor's repeated requests to speak to his mother indicated a desire to invoke the right to remain silent. Petitioner does not cite to, and this Court cannot find, federal law supporting such a conclusion. Petitioner, furthermore, was not a minor at the time of the interrogation (Pet. 20).

Petitioner also claims that he was tricked by detectives because his mother advised him that he would not need a lawyer if he were tried as a juvenile (Exh. 7 at 2). Petitioner argues that this was tantamount to the detectives giving advice to waive the right to counsel because they were aware of the substance of the conversation and did not comment on the mother's advice. The Supreme Court has held that the protections against coercion offered by the Constitution apply only to proscribe government activity. Without government coercion, it is irrelevant what other factors went into petitioner's decision. *See Colorado v. Connelly*, 479 U.S. 157, 164–65 (1986). Petitioner furthermore mis-characterizes the substance of the phone conversation. Petitioner's mother only gave conditional advice: "[B]ut *we gotta find out* what's gonna happen. *If* they try you as a juvenile, you ain't gonna need no lawyer, See [sic]" (Exh. 7 at 2) (emphasis added). Petitioner does not allege that he believed he would be tried as a juvenile. It was therefore reasonable under federal law for the state court of appeal to conclude that detectives did not badger or cajole petitioner into waiving his rights.

Despite petitioner's protestation to the contrary, the state court of appeal did take notice of the above factors when it independently reviewed the trial court's application of the totality of the circumstances test as to voluntariness. The court examined the distinction between intentional and unintentional police conduct. It examined the evidence of petitioner's background including his age, education and mental health. It examined the evidence of the interrogator's behavior (Pet., App. A at 8–9). The court applied the correct law and determined that petitioner was not coerced. Its determination cannot be said to be "unreasonable" given

7

1 that none of the factors show coercion. Petitioner has not shown that the court's decision as to
2 any of the above factors was an unreasonable application of law or determination of fact.

### 2. CONSTITUTIONALITY OF THE SENTENCE.

Petitioner next argues that the state court of appeal unreasonably applied federal law when it determined that his sentence was constitutionally proportionate to his crime. Petitioner argued before the state court that he was denied due process at sentencing because the trial court did not appreciate that it could reduce a mandatory statutory sentence of fifty-years to life for being disproportionate.

The trial court sympathized with petitioner and wished that a lighter sentence could be imposed, but said it could not do so because the sentence was mandated by statute (Pet., App. A at 13). Trial counsel did not suggest any way in which the trial court could reduce the sentence. The state court of appeal determined that the trial court had a mistaken understanding of its sentencing power because the sentence could have been reduced if the trial court found it constitutionally disproportionate. The state court of appeal evaluated the merits of the disproportionality issue on its own, making remand unnecessary. It found the sentence constitutionally proportionate. Petitioner argues that the court's proportionality analysis was flawed and that its failure to remand was a deprivation of due process. Petitioner also argues that defense counsel was ineffective for failing to raise the issue at sentencing.

### A. The State Court of Appeal's Proportionality Analysis.

Petitioner challenges the sentence as disproportionate as applied. He admits that the sentence is not facially disproportionate for the crime of murder. Petitioner says that he was seventeen at the time of the offense, mentally ill and not fully culpable because of self-defense and provocation. A federal habeas court cannot re-examine state-court determinations on state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Petitioner's appeal to state-law authorities must therefore be disregarded.

A criminal sentence must be proportionate to the crime for which the defendant has been convicted. *Solem v. Helm*, 436 U.S. 277, 290 (1983). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme

1  sentences that are 'grossly disproportionate to the crime.'" *Ewing v. California*, 538 U.S. 11,
2  23 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). The
3  sentencing court is not required to consider mitigating factors if there is a statutory mandatory
4  penalty. *Harmelin*, 501 U.S. at 994–95.

5  The decisions petitioner raises to show that age is a relevant factor all relate to the
6  application of the death penalty to minors. *See Roper v. Simmons*, 543 U.S. 551, 555–56
7  (2005); *Stanford v. Kentucky*, 492 U.S. 361, 365–66 (1989); *Thompson v. Oklahoma*, 487 U.S.
8  815, 819 (1988). But, the Supreme Court has "drawn the line of required individualized
9  sentencing at capital cases." *Harmelin*, 501 U.S. at 995–96. The death penalty was not at issue
10 in petitioner's sentencing so there was no requirement to consider mitigating factors. Minors
11 can be sentenced to life imprisonment. In *Harris*, a pre-AEDPA Ninth Circuit decision, the
12 court said that there was no inference of disproportionality when a mandatory life sentence was
13 applied to a 15-year-old murderer. *Harris v. Wright*, 93 F.3d 581, 582 (1996). Although *Harris*
14 is pre-AEDPA, it's holding shows that there is no clearly established federal law making life
15 sentences disproportionate for minors.

16 Petitioner also says his background, mental status at the time of sentencing, and the
17 circumstances of the crime show that the sentence was disproportionate. Like petitioner's age,
18 these are also mitigating factors. In accordance with the rule in *Harmelin*, the state courts were
19 not required to consider them.

20 The decision of the state court of appeal is consistent with federal law. The sentence, as
21 applied, is not grossly disproportional.

22 **B.    Failure to Remand.**

23 Petitioner argues that it was a denial of due process for the state court of appeal to
24 decide on the issue of sentence proportionality instead of leaving the determination to the trial
25 court. Petitioner says that additional evidence not on the record could have been collected on
26 remand, but does not say what that evidence would have been. Petitioner also argues that the
27 trial judge, having interacted with petitioner on a daily basis, would have been better positioned
28 to consider his background in a sentencing decision.

9

Petitioner is correct that a trial judge is in a better position to consider a variety of factors in a sentencing decision. As petitioner also repeats multiple times, the trial judge expressed his strong regret when imposing the mandatory sentence. As determined in the above section, however, the consideration of mitigating factors is not required by federal law in the context of mandatory sentences (except those involving the death penalty). Significantly, no federal authority requiring remand by the court of appeal is cited, much less Supreme Court authority.

However unfortunate petitioner's circumstances were, the mitigating factors offered were irrelevant to the proportionality analysis. The state court of appeal was able to make a determination on sentence proportionality based on the record. No federal authority having this procedure has been cited.

### C.     Ineffective Assistance of Counsel in Failure to Raise Cruel and Unusual Punishment Argument.

Petitioner argues that his trial counsel was ineffective for failing to raise the issue of sentence proportionality. The claim was never raised in state proceedings. The only ineffective assistance of counsel claim raised in state court related to jury instructions.

A petitioner who presents an ineffective assistance of counsel claim cannot "later add unrelated alleged instances of counsel's ineffectiveness to his claim." *Moormann v. Shriro*, 426 F.3d 1044, 1056 (9th Cir. 2005). The claim made now was not related to the jury instruction claim made earlier. It was not fairly presented before the state courts. It is therefore unexhausted and procedurally barred from consideration by the federal courts.

A district court may deny an unexhausted claim on the merits if it is perfectly clear that the application does not raise even a colorable federal claim. 28 U.S.C. 2254(b)(2); *See Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005). In alleging ineffective assistance of counsel, the petitioner must show that counsel was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The federal claim is denied for two reasons. *First*, the state court of appeal agreed to address the issue of cruel and unusual punishment on the merits even though trial counsel did

10

1  not raise it.  Petitioner was therefore not prejudiced by the failure to raise the claim at
2  sentencing.  *Second*, this order has already concluded that, under federal law, the sentence was
3  not disproportionate.  Petitioner would therefore have reached the same outcome had the issue
4  been raised at sentencing.  There is no colorable federal claim.  The claim is denied on the
5  merits.

## CONCLUSION

Petitioner has not shown that he is in custody in violation of federal law.  The petition is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated: July 31, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE